UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APOLINAR CRUZ-CRUZ,<br><br>Defendant. | Case No. CR13-49RSL<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a) (Dkt. # 376) and the supplemental motion submitted by appointed counsel (Dkt. # 386). Having considered the motion and the record contained herein, the Court finds as follows:[1]

### I. BACKGROUND

Defendant is a 38-year-old inmate currently incarcerated at Victorville Medium I Federal Correctional Institution ("Victorville Medium I"). PSR at 2 (listing date of birth); Dkts. # 387 at 4, # 389 at 4. Defendant was transferred to Victorville Medium I from Reeves I & II Correctional Institution ("CI Reeves") on April 15, 2021, after defendant filed the instant motion for compassionate release on March 4, 2021. Dkts. # 387 at 4, # 389 at 4. On March 13, 2015, defendant pled guilty to conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1),

---

[1] The Court GRANTS defendant's motions to file an overlength supplemental motion and reply (Dkts. # 385, # 388).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 1

(b)(1)(A), and 846. Dkt. # 266. On September 11, 2015, the Court sentenced defendant to a 120-month prison term and five years of supervised release. Dkt. # 328 at 2–3. Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on August 29, 2021. Dkts. # 386 at 2, # 387 at 4.

## II. LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>> (1) in any case—
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>>>> (ii) . . .

and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides,

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>     (A) **Medical Condition of the Defendant**—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 4

2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13. The Ninth Circuit has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." United States v. Aruda, 993 F.3d 797, 798 (9th Cir. 2021). The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but the policy statement is not binding. Id.; see United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3–5 (W.D. Wash. May 29, 2020) (referring to the guidance of U.S.S.G. § 1B1.13 as "persuasive, but not binding").

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 5

### III. DEFENDANT'S CIRCUMSTANCES

#### a. Exhaustion Requirement

Prior to considering the merits of defendant's motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). The parties agree that defendant satisfied this requirement. Dkts. # 386 at 3, # 387 at 6–7. On December 10, 2020, defendant submitted a request for compassionate release, which the Warden at CI Reeves denied on January 21, 2021. Dkt. # 386-2. Because thirty days have lapsed since the request was presented to the Warden, the Court finds defendant has exhausted his administrative remedies, and the Court will consider the merits of his motion for compassionate release.

#### b. "Extraordinary and Compelling" Circumstances

Defendant's motion for compassionate release is based on his argument that the combination of the following factors establish extraordinary and compelling circumstances: the conditions of his confinement during the COVID-19 pandemic, the Court's inability to consider mitigating circumstances at sentencing, the government's decision to revoke a pre-trial plea offer, and defendant's record of rehabilitation. Dkt. # 389 at 1.

The Court need not reiterate the widely known information regarding the symptoms of COVID-19 and the devastating global impact of the virus. COVID-19 has created unprecedented challenges for federal prisons, where inmate populations are large and close contact between inmates is unavoidable. As of May 13, 2021, the BOP reports 100 federal inmates and 175 BOP staff have active, confirmed positive COVID-19 test results. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 13, 2021). Since the BOP reported its first case in late March 2020, at least 234 federal inmates and four BOP staff members have died from the virus. Id. Victorville Medium I currently reports only one inmate and zero staff with active, positive COVID-19 test results.[2] Id. BOP has

---

[2] Defendant's previous facility, CI Reeves, currently reports a population of zero inmates. CI Reeves I & II, Fed. Bureau of Prisons, https://www.bop.gov/locations/ci/ree/ (last visited May 13, 2021). The Court was unable to locate current COVID-19 statistics for CI Reeves on the BOP website:

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 6

classified 608 inmates and 82 staff at Victorville Medium I as having "recovered" from the virus and two inmates and one staff member as having died from it. Id. The Court acknowledges that the COVID-19 outlook is not as bleak as it was last spring now that vaccine distribution is underway.[3] See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 13, 2021) (showing vaccine implementation statistics).

First, with respect to defendant's argument regarding conditions of confinement at CI Reeves, many courts have rejected arguments regarding general conditions that affect inmates indiscriminately throughout the prison. See, e.g., United States v. Bolden, No. CR16-320-RSM, 2020 WL 4286820, at *7 (W.D. Wash. July 27, 2020) ("[G]eneral conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release."), appeal dismissed, No. 20-30168, 2020 WL 6580183 (9th Cir. Aug. 26, 2020); United States v. Butov, No. CR16-226RSM, 2020 WL 5910063, at *5 (W.D. Wash. Oct. 6, 2020) (stating that "[c]ourts have consistently rejected . . . generalized arguments as a basis for compassionate release," e.g., challenges to medical staffing and lack of adequate testing). Defendant cites three cases from this District for his assertion that courts "have taken account of the harsh conditions of confinement in consideration of motions for compassionate release. Dkt. # 386 at 8. While this is true, these courts considered the conditions

---

https://www.bop.gov/coronavirus/. Presumably, this is due to closure of the facility. See Shane Battis, "Reeves County Detention Center to Close Some Units After Losing Contract with Federal Government," CBS7 (Mar. 27, 2021) https://www.cbs7.com/2021/03/27/reeves-county-detention-center-to-close-some-units-after-losing-contract-with-federal-government/ (last visited May 13, 2021) (reporting that all of the prisoners would be transferred elsewhere).

[3] Victorville Federal Correctional Complex, which contains Victorville Medium I, has inoculated 1,436 inmates of a total population of around 3,796. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 13, 2021) (reflecting 1,436 "Full Inmate Inoculations Completed"); FCI Victorville Medium II, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/vvm/ (last visited May 13, 2021) (reflecting 1,296 inmates); FCI Victorville Medium I, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/vim/ (last visited May 13, 2021) (reflecting 1,439 inmates); USP Victorville, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/vip/ (last visited May 13, 2021) (reflecting 1,061 inmates).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 7

of confinement for purposes of analyzing the § 3553(a) factors, not for purposes of determining whether a defendant established the threshold extraordinary and compelling circumstances. See United States v. Bush, No. CR06-5504 BHS, 2021 WL 135869, at *3–4 (W.D. Wash. Jan. 14, 2021) (analyzing the conditions of confinement in applying the § 3553(a) factors for a defendant who established extraordinary and compelling circumstances related to his particular health conditions); United States v. Indarte, No. CR17-5554 BHS, 2020 WL 6060299 (W.D. Wash. Oct. 14, 2020), at *4–5 (same); United States v. Crawford, No. CR18-305 BHS, 2021 WL 409973, at *3–4 (W.D. Wash. Feb. 5, 2021) (same). Defendant's reasoning related to conditions of his confinement is lacking because it is not sufficiently individualized. For example, defendant refers to reports showing that BOP staffing shortages have generally led to "inadequate care of inmates infected with a potentially fatal and often very painful infectious disease." Dkt. # 386 at 7. Although defendant "maintains he was exposed to COVID-19 and uncertain about recovery because the facility never tested inmates," he does not mention requesting medical care, nor does he list any specific symptoms regarding his alleged exposure or its timing. Dkt. # 376 at 2. Similarly, defendant refers to the types of symptoms inmates may typically develop from isolation or solitary confinement, and defendant vaguely asserts that the conditions at CI Reeves have caused "irreparable damage to [his] mental health," but he does not provide any detail on his particular experiences or symptoms. Dkts. # 376 at 2, # 386 at 7. Defendant also does not assert that he has any medical conditions that place him at a high risk for serious illness from COVID-19.[4] Defendant's allegations regarding general conditions of confinement, coupled with vague allegations of COVID-19 exposure and damage to mental health, are insufficient to establish extraordinary and compelling reasons exist.

---

[4] Defendant cites United States v. Tran, No. CR95-00151 JAO-05, 2021 WL 329203 (D. Haw. Feb. 1, 2021) and United States v. Kalkat, 2:17-CR-0022-WFN-1 (E.D. Wash. Jul. 6, 2020) as granting compassionate release in part based on CI Reeves' conditions. Dkt. # 389 at 4–5. Notably, the courts' decisions in both of these cases were also based on the defendants' specific medical conditions that made them more vulnerable to serious complications from COVID-19, thereby making CI Reeves' conditions particularly relevant to those defendants. Defendant has not made any similar showing.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 8

Defendant argues that the previous factor, in *combination* with others, nevertheless amounts to extraordinary and compelling reasons. Defendant contends that the Court's inability to consider mitigating circumstances at sentencing is one of these other factors establishing extraordinary and compelling reasons. While this factor is relevant to analyzing the § 3553(a) factors, the fact that a mandatory minimum sentence applied at sentencing does not move the needle very far on the extraordinary-and-compelling scale where the sentence is otherwise consistent with current law. Defendant relies upon United States v. McPherson, 454 F. Supp. 3d 1049 (W.D. Wash. 2020) for the principle that a "defendant's long sentence in relation to the severity of his crime" was sufficient to support establishing extraordinary and compelling circumstances "even where defendant had no presented no evidence [sic] or concerns regarding the ongoing COVID-19 pandemic." Dkt. # 386 at 10. In fact, the court considered Mr. McPherson's vulnerability to COVID-19 together with his long and "clearly unfair sentence." McPherson, 454 F. Supp.3d at 1053. Mr. McPherson had been "sentenced to over 32 years in prison for what is now probably a 17-year crime" due to the effect of mandatory stacking of 18 U.S.C. § 924(c) penalties, and this stacking is no longer required. Id. at 1050, 1053. Unlike Mr. McPherson, defendant is not facing a 15-year sentencing disparity, nor does he cite any medical conditions that reflect any increased vulnerability to COVID-19.

The two factors discussed above do not establish extraordinary and compelling circumstances, and the factor defendant articulates regarding the pre-trial plea offer does not meet this standard either. Defendant contends that the government "punitively revoke[d] a pre-trial plea offer within an extremely short time period." Dkt. # 389 at 1. On August 12, 2014, the government offered defendant a pre-trial plea offer of seven years, dependent on his co-defendant accepting an offer of eight years, and the deadline for acceptance was entry of the pleas by August 15, 2014, i.e., three days after the offer. Dkts. # 386 at 11, # 324-1. On August 14, 2014, defendant met with counsel to discuss the offer, but defendant did not accept the offer within the timeline. Dkts. # 386 at 11–12, # 387 at 3, # 324-3. Defendant acknowledges, however, that the government "has no obligation or requirement to offer *any* resolution and can revoke such resolution at any time," Dkt. # 386 at 11, and this Court is not persuaded that the

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 9

government's short timeframe for acceptance of the offer, even considered in combination with the other factors, rises to the level of extraordinary and compelling circumstances. Defendant compares the plea-offer timeline to the "trial tax," Dkt. # 389 at 6, and he cites United States v. Haynes, 456 F. Supp. 3d 496 (E.D.N.Y. 2020) as an example of a case where extraordinary and compelling reasons were established by demonstrating that defendant was severely penalized by choosing to exercise his right to trial. Dkt. # 389 at 3. Haynes is a far cry from the current case because Haynes involved a plea offer with an explicit quid pro quo (i.e., plead guilty by this date or else "the government will seek to obtain a superseding indictment charging the appropriate additional counts under 18 U.S.C. § 924(c)"), and Mr. Haynes was punished "with 30 additional years in prison for electing to go to trial." Haynes, 456 F. Supp. 3d at 516. Here, by contrast, defendant declined a favorable plea offer with no explicit threat of additional charges, and while defendant was offered a less favorable deal months later, this does not strike the Court as giving rise to extraordinary or compelling circumstances.

      The last factor defendant cites is his record of rehabilitation. The fact that defendant has only three disciplinary infractions, all more than six years old, and that he has engaged in some educational programming during his incarceration (e.g., courses on anger management, English, and parenting) reflects well on his rehabilitation. Dkt. # 389-2. Although the Court commends defendant on taking these strides and does not intend to minimize defendant's progress, the rehabilitation itself does not establish extraordinary and compelling circumstances. In the case defendant cites for non-medical, rehabilitation-based extraordinary and compelling reasons, United States v. Millan, 2020 U.S. Dist. LEXIS 59955, at *27–28 (S.D.N.Y. 2020), the defendant, Mr. Millan, completed more than 7,600 hours of BOP programming and apprenticeships, earned his Associates Degree, and worked a full-time job for more than eighteen years. BOP staff consistently described Mr. Millan as a model inmate and they submitted letters demonstrating "unwavering" support for his release. Id. at *44–46. Mr. Millan also served as a leader of the religious community at his facility and as a leader of a program reaching out to at-risk youth. Id. at *36–44. Defendant's record here reflects definite progress, but it is not akin to the exceptional rehabilitation efforts evidenced in Millan.

Even considering all of the factors defendant cites together, the Court concludes that defendant has failed to establish that extraordinary and compelling reasons warrant reduction here. The Court therefore DENIES defendant's motion for compassionate release. Having determined that defendant has not made the requisite showing of extraordinary and compelling reasons for compassionate release, the Court need not analyze whether a reduction in defendant's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

## IV. CONCLUSION

For all the foregoing reasons, defendant's motion for compassionate release (Dkts. # 376, # 386) is DENIED. Defendant's motions to file an overlength supplemental motion and reply (Dkts. # 385, # 388) are GRANTED.

IT IS SO ORDERED.

DATED this 17th day of May, 2021.

Robert S. Lasnik
United States District Judge